IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| LAWRENCE DEYOUNG, | Case No. 1:16-cv-02331-JR |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

RUSSO, Magistrate Judge:

Plaintiff Lawrence DeYoung brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Title II Disability Insurance Benefits. All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

Page 1 – OPINION AND ORDER

## BACKGROUND

Born in 1955, plaintiff alleges disability beginning December 31, 2012, due to hearing loss, vision problems, depression, and post-traumatic stress disorder. Tr. 162, 201. On April 17, 2015, the Administrative Law Judge ("ALJ") issued a decision finding plaintiff not disabled. Tr. 15-28. After the Appeals Council denied his request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 17. At step two, the ALJ determined the following impairments were medically determinable and severe: "[g]laucoma; hearing loss accommodated with hearing aids; posttraumatic stress disorder; depression." Id. At step three, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 18.

The ALJ next resolved plaintiff had the residual functional capacity ("RFC") to perform work at any exertional level, but with certain non-exertional limitations:

> He can perform [jobs] that do not require near visual acuity. He can perform simple routine tasks. He can work in [jobs] that do not require direct work with the public. He can have superficial coworker contact. He can tolerate moderate noise levels and must avoid concentrated exposure to hazards.

Tr. 19.

At step four, the ALJ found plaintiff was unable to perform his past relevant work. Tr. 26. At step five, the ALJ concluded plaintiff could perform a significant number of jobs in the national and local economy despite his impairments, such as yard worker and tree planter. Tr. 28.

# DISCUSSION

Plaintiff argues the ALJ erred by: (1) rejecting medical evidence from Gary Gaffield, D.O.; and (2) rendering an invalid step five finding.

## I. Medical Opinion Evidence

Plaintiff asserts the ALJ wrongfully discredited Dr. Gaffield's medical opinion. There are three types of acceptable medical opinions in Social Security cases: those from treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). To reject the uncontroverted opinion of an examining doctor, the ALJ must present clear and convincing reasons, supported by substantial evidence. Id. (citation omitted). If an examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons, supported by substantial evidence. Id. at 830-31 (citation omitted).

In December 2014, Dr. Gaffield performed a one-time physical assessment of plaintiff, which consisted of a clinical interview and examination. Tr. 328-33. Plaintiff initially complained only of eye disease and hearing loss; when Dr. Gaffield began soliciting information concerning specific physiological systems, plaintiff generally endorsed low back pain and poor balance. Compare Tr. 328, with Tr. 329. Upon examination, plaintiff indicated that impaired balance prevented him from hopping, bending, squatting, and heal, toe, and tandem walking. Tr. 331.

Dr. Gaffield opined: plaintiff had no limitations in standing, walking, or manipulative activities; did not need any assistive devices other than hearing aids, which corrected his hearing loss; should avoid workplace situations involving bright lights or darkness, or that use sound signals for safety cues, due to glaucoma and hearing loss; and could lift/carry 20 pounds

occasionally and 10 pounds frequently, with occasional postural activities and no hazards, due to impaired balance. Tr. 332-39.

The ALJ afforded "some weight" to Dr. Gaffield's opinion. Tr. 25. Specifically, the ALJ credited Dr. Gaffield's "hearing and vision limitations [because they] are supported by the objective medical evidence in [plaintiff's] file." Id. The ALJ, however, rejected the doctor's balance limitations because they were: (1) not supported by the record, as plaintiff "made no complaints regarding his difficulty balancing" at the hearing or otherwise, and plaintiff's long-term girlfriend, Carla Frakes, did not observe any balance problems; (2) inconsistent with plaintiff's activities of daily living; and (3) based on plaintiff's subjective symptom statements. Id. The ALJ also denoted that plaintiff's reports of impaired balance were "suspect in light of the fact Dr. Gaffield's evaluation was done after [the] hearing, suggesting he exaggerated his physical limitations." Id.

An ALJ need not accept a medical opinion that is based on impairments previously unreported by the claimant. Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001). Similarly, an ALJ may reject a medical report that is inconsistent with the other evidence of record, including the claimant's daily activities. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 601-02 (9th Cir. 1999) (citation and internal quotations omitted). Further, an ALJ may afford less weight to medical evidence "premised to a large extent upon the claimant's own accounts of his symptoms and limitations . . . where those complaints have been properly discounted." Id. at 602 (citation and internal quotations omitted).

Here, substantial evidence supports the ALJ's decision. Plaintiff sought treatment throughout the adjudicative period but never reported any issues with balance, either to the

Social Security Administration or his medical providers. In applying for benefits, plaintiff listed his disabling conditions as posttraumatic stress disorder, hearing loss, and vision issues. Tr. 201. At the hearing, both plaintiff and his attorney identified only the following as barriers to employment: glaucoma, hearing problems, and mental impairment due to posttraumatic stress disorder and depression. Tr. 38, 42, 50-52. The medical evidence likewise does not reflect any subjective reports or objective indication of poor balance prior to Dr. Gaffield's evaluation.[1] Tr. 68-91, 258-327.

Plaintiff's daily activities were also in excess of Dr. Gaffield's assessed limitations. Significantly, the record demonstrates that plaintiff engaged in activities predicated on balance – i.e., riding his bike and frequent walks in the woods (sometimes for three-to-four hours at a time and carrying military gear and guns). Tr. 44, 49, 56, 215, 260, 282. Moreover, in a Third-Party Adult Function Report (dated May 2013), Ms. Frakes stated that she spent "[a]lmost 24/7" with plaintiff but did not observe any problems with lifting, carrying, or walking. Tr. 211, 216. In fact, she reported plaintiff did "laundry, [the] dishes, [and] outside chores," further reflecting that plaintiff had no notable issues relating to lifting and carrying objects, or walking over uneven terrain. Tr. 213.

---

[1] Plaintiff maintains he should not be penalized for neglecting to complain of balance problems prior to Dr. Gaffield's assessment, as he "might not have been aware of the significance of his difficulties or that they might limit his ability to work." Pl.'s Opening Br. 3 (doc. 12); but see Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (claimant's failure to report cardiac symptoms to his medical providers suggested those symptoms were not as severe as alleged). Aside from the fact that this assertion is speculative, plaintiff's attorney certainly would have been aware of the significance of impaired balance but nonetheless did not mention this condition at the hearing, despite being afforded the opportunity to do so. In any event, because the ALJ's interpretation of the record is reasonable, especially in light of the other evidence addressed herein, it must be upheld. Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).

Finally, Dr. Gaffield recorded no problems with balance during portions of the examination wherein plaintiff did not realize he was being formally evaluated for balance related issues. For instance, plaintiff's Romberg test, which is a common method for quantifying balance where the patient closes his or her eyes and is instructed to stand still, was negative. Tr. 330; Bissmeyer v. Colvin, 2016 WL 6635629, *3 n.3 (C.D. Cal. Nov. 9, 2016). When plaintiff first entered the examination room, Dr. Gaffield observed that he "arose from the chair in the waiting room . . . without effort" and "got on and off the exam table without difficulty." Tr. 331. In contrast, when Dr. Gaffield asked plaintiff to hop, bend, squat, and heal, toe, and tandem walk, "[h]e was flinging his arms around [and] state[d] he is unable to perform these functions due to poor balance." Id. This evidence supports the ALJ's determination that Dr. Gaffield's balance-based restrictions were premised predominantly on plaintiff's subjective symptom statements, as opposed to any objective metric.[2] See Ukolov v. Barnhart, 420 F.3d 1002, 1006 (9th Cir. 2005) (unlike "objective diagnostic techniques," clinical findings that are "susceptible to subject manipulation . . . cannot establish the existence of a disability").

In sum, the ALJ provided legally sufficient reasons, supported by substantial evidence, for discrediting Dr. Gaffield's balance-based limitations.[3] The ALJ's assessment of Dr. Gaffield's opinion is affirmed.

---

[2] The ALJ determined that plaintiff's testimony concerning the extent of his symptoms was not fully credible and plaintiff does not now challenge this finding on appeal. Tr. 20-24; see generally Pl.'s Opening Br. (doc. 12).

[3] Although not dispositive, the Court notes the only other two examining doctors in the record found that plaintiff "may be exaggerating existing symptoms" or was "not easy to interview," despite being "[o]vertly cooperative." Tr. 260-61, 282. In addition, plaintiff denied any drug or alcohol consumption to Dr. Gaffield, but reported regular alcohol and marijuana usage to other providers. Compare Tr. 329, with Tr. 259, 273, 282, 294, 318.

## II. RFC and Step Five Finding

Plaintiff contends the ALJ erred at step five by formulating a RFC that failed to account for all of his limitations. Alternatively, plaintiff argues the ALJ's step five finding "was not supported by substantial evidence [as the jobs identified by the vocational expert] do not exist in significant numbers locally or nationally." Pl.'s Opening Br. 1 (doc. 12).

The RFC is the maximum a claimant can do despite his impairments. 20 C.F.R. § 404.1545. In determining the RFC, the ALJ considers limitations imposed by all the claimant's impairments, even those that are not severe, and evaluates "the relevant medical and other evidence," including the claimant's testimony. SSR 96-8p, available at 1996 WL 374184. Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the vocational expert. Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

As discussed above, the ALJ did not err in weighing Dr. Gaffield's opinion. Plaintiff's contention, which is contingent upon a finding of harmful error in regard to the aforementioned issue, is therefore without merit. Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

To the extent plaintiff challenges the vocational expert's testimony regarding the incidence of jobs, his argument is unavailing. The vocational expert identified two representative occupations in response to the ALJ's dispositive hypothetical question: yard worker, DOT § 301.687-018, with 68,000 positions nationally and 1,300 in Washington; and tree planter, DOT § 452.687-018, with 4,300 positions nationally and 200 in Washington. Tr. 28, 58, 61, 65. Collectively, the vocational expert described 72,300 jobs in the national economy and 1,500 jobs

in the regional economy that plaintiff could perform despite his impairments. Id. The Ninth Circuit has found fewer representative occupations significant for the purposes of the Social Security Act. See Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 528-29 (9th Cir. 2014) (25,000 nationwide jobs significant); Thomas v. Barnhart, 278 F.3d 947, 960-61 (9th Cir. 2002) (1,300 jobs in Oregon significant); see also Beltran v. Astrue, 700 F.3d 386, 389-90 (9th Cir. 2012) (if either the regional or national number of jobs is significant, the ALJ's decision must be upheld) (citation omitted). The ALJ's RFC and step five finding are affirmed.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 20th day of October 2017.

                                                 s/Jolie A. Russo
                                                 JOLIE A. RUSSO
                                                 United States Magistrate Judge